**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 19, 2012

No. 10-31240

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RANDEL J. MASON,

Defendant - Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Randel Mason appeals his conviction for wire fraud and his sentence of 30 months' imprisonment and $757,792.20 in restitution. He argues that the district court committed plain error by failing to advise him during his guilty plea colloquy of his right to court-appointed counsel if financially eligible, as required by Rule 11 of the Federal Rules of Criminal Procedure. He also argues that the district court violated his Sixth Amendment right to choice of counsel by denying his motion, filed five weeks before his scheduled sentencing date, to substitute appointed counsel for his retained counsel. We AFFIRM Mason's conviction, but VACATE his sentence and REMAND for re-sentencing.

No. 10-31240

## I.

Mason is a building contractor and the former owner of Mason Construction Company, Inc., which built residential homes. Mason Construction built homes in five to seven stages. Upon completion of each stage, Mason Construction submitted a draw on its line of credit to its financing company, National City Mortgage (now PNC Mortgage). To receive these draws, Mason Construction submitted a completion certification and an inspection certification signed by an independent inspector.

The conduct relevant to Mason's conviction involved Mason and his long-time office assistant and co-defendant, Tammy Dixon. In August 2005, Mason and Dixon crossed the line, submitting false documentation to National City Mortgage. By this scheme, Mason and Dixon fraudulently obtained $825,943.60. In December 2009, Mason and Dixon were charged with conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 371 and 1343, and twenty-nine counts of wire fraud, in violation of 18 U.S.C. § 1343.

Mason made his initial appearance before the magistrate judge on January 11, 2010, with retained counsel, David Williams. On April 12, 2010, Williams filed a motion to withdraw as counsel, which the magistrate judge denied on April 14. Thereafter, Mason appeared before the district court with Williams on the morning of June 3, 2010, to enter a guilty plea. The district court, however, continued the hearing until that afternoon after Mason said he was confused about the plea. The district court reconvened the hearing that afternoon, but had to reschedule it until June 23, 2010, because after the district court clarified the maximum possible sentence under the plea agreement, Mason indicated that he did not know what to do in light of more fully understanding the consequences of his plea. Before the conclusion of that hearing, Mason indicated that he intended to plead guilty because he did not think he could afford a long trial:

2

No. 10-31240

THE DEFENDANT: I'm sorry, but I — I don't mean to waste the Court's time. I just really don't know what to do.

THE COURT: You're not wasting anybody's time. That's what I'm paid to do. And I don't do piecework, so I want you to be absolutely comfortable and assured of what you're doing. So we'll just put this off to another time.

. . . .

THE DEFENDANT: Your Honor, I don't mean to . . . But no one ever interviewed me, and no one ever heard my side of the story. But yet, you know, I don't want to go to jail or — you know, I mean, I have a serious problem with this because I didn't create this problem.

THE COURT: Well, that's — then do not plead guilty. If you —

THE DEFENDANT: But I can't afford a long trial.

THE COURT: Well, I'm not sure how long the trial will be. Let's tentatively set this for 10:00 on June 23, at which time you can make up your mind what you wish to do. Okay?

Although Mason did not enter a guilty plea on June 3, he did file a document entitled "Understanding of Maximum Penalty and Constitutional Rights" (Understanding of Constitutional Rights), which he had signed on April 30, 2010. In that document, Mason averred that he understood his "right to be represented by counsel (a lawyer) of [his] choice, or if [he could not] afford counsel, [his] right to be represented by court-appointed counsel at no cost to [him]."

On June 17, 2010, Williams filed a second motion to withdraw as Mason's counsel, citing a breakdown in his ability to communicate with Mason that, he asserted, rendered effective representation impossible. The district court did not rule on this motion until the hearing on June 23, 2010. At that hearing the district court asked Mason about his relationship with Williams. Mason responded that he was now satisfied with Williams:

3

No. 10-31240

THE COURT: You were originally scheduled for a guilty plea today, but I gather you want to change attorneys?

THE DEFENDANT: No, sir. Mr. Williams and I have spent quite a long time this week. I think I have a better feel now for what's going on.

THE COURT: All right. So tell me; are we now agreed that Mr. Williams can represent you?

THE DEFENDANT: Yes, sir.

THE COURT: You're sure you're satisfied with that?

THE DEFENDANT: Yes, sir, I'm satisfied.

Before accepting Mason's guilty plea, the district court again sought and received Mason's assurance that he was satisfied with Williams's representation:

THE COURT: . . . All right. Mr. Mason, let's talk frankly. This is the point at which I usually ask: Have you had all the time that you need to discuss this with your lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: You have? Are you sure you have?

THE DEFENDANT: Yes, sir.

THE COURT: And you are satisfied with him as a lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: Are you sure, because — tell me about why, how you came back to believing he was a good lawyer for you.

THE DEFENDANT: I never thought he wasn't a good lawyer. I just was confused. I mean, we came in with one plea agreement and then I guess I got blindsided with another one, and I didn't quite understand the consequences. And we just really weren't communicating very well.

THE COURT: But you are now?

THE DEFENDANT: Yes, sir. He sat down and we talked at length, and I think I understand, yes, sir.

THE COURT: Are you sure you understand what's happening?

THE DEFENDANT: Yes, sir.

THE COURT: And you are sure that you want to keep Mr. Williams?

THE WITNESS [sic]: Yes, sir.

4

No. 10-31240

The district court then proceeded to conduct the plea-taking ceremony required by Rule 11 of the Federal Rules of Criminal Procedure. However, the district court did not orally advise Mason of the right of a financially eligible defendant to have court-appointed counsel represent him at trial and every other stage of the proceedings. Mason pleaded guilty to counts 6 and 27. The district court accepted Mason's plea.

On August 20, 2010, Mason filed a letter requesting "the court to appoint an attorney who can help me." Mason explained that he was "not working well with . . . Williams on [his] sentencing hearing" and that he was confident that "Williams [did] not want to spend too much time with [him] because of [his] inability to pay promptly." Almost a month later, the district court denied Mason's request without reasons.

The district court sentenced Mason on November 18, 2010. According to the calculations in Mason's Presentence Investigation Report (PSR), Mason's guidelines sentencing range was 27 to 33 months. After a lengthy hearing on the amount of loss caused by Mason's fraud, the district court adopted the PSR's calculations, and sentenced Mason to 30 months' imprisonment on each count, to run concurrently. The district court ordered Mason to pay $757,792.20 in restitution to the victim mortgage company. The district court also imposed a three-year term of supervised release for each count, to run concurrently.

After filing a timely notice of appeal, Williams filed a motion to withdraw and to have counsel appointed to represent Mason on appeal. Mason then filed a financial affidavit under seal. The district court determined that Mason was financially unable to retain counsel, granted Williams's motion to withdraw, and ordered that counsel be appointed to represent Mason.

No. 10-31240

## II.

### A. Mason's Challenge to his Guilty Plea

Mason first asks us to overturn his guilty plea. He argues that the district court committed reversible error by failing to advise him of his right to court-appointed counsel, if financially eligible, during his guilty plea colloquy, as required by Fed R. Crim. P. 11(b)(1)(D).

Because Mason did not raise this issue in the district court, we review for plain error. Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Vonn*, 535 U.S. 55, 59 (2002). Mason therefore bears the burden of proving (1) error, (2) that is plain, and (3) that affects his substantial rights. *Vonn*, 535 U.S. at 62–63; *United States v. Olano*, 507 U.S. 725, 733–34 (2003). We are not confined to considering only the record of the plea proceeding, but "may consult the whole record when considering the effect of any error on substantial rights." *Vonn*, 535 U.S. at 59. If Mason satisfies the first three prongs of the plain error analysis, we proceed to the fourth prong, which affords us "the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009) (internal quotation marks omitted).

Mason has satisfied prong one. In relevant part, Rule 11 requires a district court, before accepting a guilty plea, to "address the defendant personally in open court," during which address it "must inform the defendant of, and determine that the defendant understands . . . the right to be represented by counsel—and if necessary have the court appoint counsel—at trial and at every other stage of the proceeding." Fed. R. Crim. P. 11(b)(1)(D). In this case, during the Rule 11 plea-taking ceremony, the district court did not orally advise

6

No. 10-31240

Mason of his right, if financially eligible, to court-appointed counsel. The government nevertheless maintains that the district court satisfied Rule 11 by advising Mason that, should he proceed to trial, Williams would represent him[1] or, alternatively, by accepting from Mason his signed copy of the Understanding of Constitutional Rights document. Neither of these facts satisfies the plain language of Rule 11. Rule 11(b)(1)(D) requires district courts to inform defendants of their right to *court-appointed* counsel, if necessary, not merely to counsel. And Rule 11 expressly requires district courts to "address the defendant personally in open court" concerning certain specified rights, not merely to accept a defendant's written acknowledgment of his understanding of those rights. The district court's failure to satisfy Rule 11's express requirements was error.[2]

---

[1] At Mason's aborted plea hearing on June 3, 2010, the district court advised him: "If we had a trial, the witnesses would have to testify in your presence and in the presence of Mr. Williams, who could object to any evidence offered by the Government. He could put on evidence in your behalf. He could subpoena witnesses from anywhere . . . Do you understand that?"

On June 23, 2010, before accepting Mason's guilty plea, the district court advised him: "If we had a trial, the witnesses would come to court and testify in your presence, in the presence of Mr. Williams, who could cross-examine them, object to evidence . . . put on evidence in your behalf, subpoena witnesses from anywhere. . . . Understood?"

[2] The dissent would find no error here on the basis of our holding in *United States v. Sanchez*, 650 F.2d 745, 748 (5th Cir. 1981), that where a defendant is represented by appointed counsel at his guilty plea colloquy, a district court does not violate Rule 11 if it informs the defendant of his right to counsel at all stages of the proceedings, but not "that this right [is] a right to appointed counsel." *Sanchez* is distinguishable because Mason was represented by retained, not appointed, counsel at his plea hearing. More importantly, *Sanchez*'s holding does not survive the 2002 amendments to Rule 11. *Sanchez* grounded its holding in a provision of the text of Rule 11 that has since been deleted: "Rule 11(c)(2) [the precursor to the present Rule 11(b)(1)(D)], by its own language, limits the necessity for such a charge to situations where 'the defendant is not represented by an attorney' at the plea proceeding." *Id*. The dissent would avoid the force of the deletion of this clause by resorting to the Advisory Committee Notes pertinent to the 2002 amendments to Rule 11, which assert that those amendments were "intended to be stylistic only, except as noted below." That comment in the Notes cannot, however, alter the plain text of the current version of Rule 11. "[I]t is that Rule which by its terms governs," not expressions of the drafters' intent in the Advisory Committee Notes. *Johnson v. United States*, 520 U.S. 461, 466 (1997); *see also Tome*

7

No. 10-31240

Mason satisfies prong two as well. "'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'" *Olano*, 507 U.S. at 734. Because the requirements of Rule 11 are explicit, and a review of the transcript shows that the mandatory advice was not given, the district court's error in failing to adhere to Rule 11 was obvious.

Accordingly, we must determine whether the district court's error affected Mason's substantial rights. It is well-settled that, "[a]s a general rule, an error affects a defendant's substantial rights only if the error was prejudicial." *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 363 (5th Cir. 2010). "Error is prejudicial if there is a reasonable probability that the result of the proceedings would have been different but for the error." *Id.* To prevail, therefore, Mason "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Moreover, "[t]he probability of a different result must be sufficient to undermine confidence in the outcome of the proceedings." *Gonzalez-Rodriguez*, 621 F.3d at 363.

Applying these principles, we hold that the district court's error did not affect Mason's substantial rights. Mason's strongest evidence that the district court's error caused him to plead guilty is his exchange with the district court

---

*v. United States*, 513 U.S. 150, 167–68 (1995) (Scalia, J., concurring in part and concurring in the judgment) (explaining that "[i]t is the words of the Rules that have been authoritatively adopted—by this Court, or by Congress if it makes a statutory change" and that although the Notes are submitted to the Court and Congress, "there is no certainty that either we or they read [them], nor is there any procedure by which we formally endorse or disclaim them. That being so, the Notes cannot, by some power inherent in the draftsmen, change the meaning that the Rules would otherwise bear."). Although we have, as the dissent points out, recently cited the relevant portion of *Sanchez* with approval, see *United States v. Saucedo-Rios*, 439 F.App'x 316, 317 (5th Cir. 2011) (per curiam) (unpublished), that case is not precedential. Nor does it appear that *Sanchez*'s vitality after the 2002 amendment was called into question in *Saucedo-Rios*. Nor was *Saucedo-Rios*'s reliance on *Sanchez* necessary to its holding, because the panel also held that the defendant failed to satisfy the substantial rights prong of the plain error test. *Id.*

No. 10-31240

at his June 3, 2010 hearing. After deciding not to plead guilty, Mason lamented to the district court that "no one ever interviewed me, and no one ever heard my side of the story. But yet, you know, I don't want to go to jail or—you know, I mean, I have a serious problem with this because I didn't create this problem." After the district court responded, "then do not plead guilty," Mason objected, "But I can't afford a long trial." As Mason would have it, this statement definitively proves that he would have decided to proceed to trial right then and there if only he could have afforded trial counsel. This interpretation would, indeed, be quite powerful if the only record evidence were the transcript of the June 3 hearing. But the remainder of the record precludes Mason's interpretation.

Most fatal to Mason's position, the record reveals that Mason was aware of his right to appointed trial counsel notwithstanding the district court's error. More than a month before his first attempt to plead guilty, Mason signed the Understanding of Constitutional Rights document, a simple document, with barely over a page of double-spaced text, that plainly states that he understood his right to a court-appointed attorney if he could not afford his own. By affixing his signature to that document, Mason "state[d] that I understand . . . [m]y right to be represented by counsel (a lawyer) of my choice, or if I cannot afford counsel, my right to be represented by court-appointed counsel at no cost to me." Mason's retained attorney also signed the document. Recognizing the difficulty that this document poses for his position, Mason argues that although the document reflects his understanding of his right to court-appointed counsel for his guilty plea hearing, it does not demonstrate that he was aware of his right to appointed *trial* counsel. He asserts that this was his understanding given that the document "was prepared in connection with a plea hearing" and nowhere explicitly states that the right to appointed counsel extends to trial.

9

No. 10-31240

We are unconvinced. Mason could not have reasonably read the document as referring to his right to appointed counsel only in connection with his guilty plea, and not trial, because the other constitutional rights he acknowledged in that document pertain to trial, not his guilty plea.

Moreover, there are many indications in the record that Mason's guilty plea was voluntary. Before accepting Mason's plea on June 23, 2010, the district court twice requested and obtained his assurance that he wanted to plead guilty. At the hearing, Mason twice indicated that he understood what was occurring. The district court found him competent to enter his plea. And although Mason had previously expressed dissatisfaction with Williams, his attorney, he repeatedly reassured the district court before pleading guilty that he was happy with Williams representing him, and was sure he wanted to keep him as his lawyer. The following conversation is illustrative:

> THE COURT: And you are satisfied with [Williams] as a lawyer?
> THE DEFENDANT: Yes, sir.
> THE COURT: Are you sure, because — tell me about why, how you came back to believing he was a good lawyer for you.
> THE DEFENDANT: I never thought he wasn't a good lawyer. I just was confused. I mean, we came in with one plea agreement and then I guess I got blindsided with another one, and I didn't quite understand the consequences. And we just really weren't communicating very well.
> THE COURT: But you are now?
> THE DEFENDANT: Yes, sir. He sat down and we talked at length, and I think I understand, yes, sir.
> THE COURT: Are you sure you understand what's happening?
> THE DEFENDANT: Yes, sir.
> THE COURT: And you are sure that you want to keep Mr. Williams?
> THE WITNESS [sic]: Yes, sir.

Given that Mason knew about his right to appointed counsel from the Understanding of Constitutional Rights document, and that he unequivocally

10

reiterated that his plea was voluntary and that he was satisfied with his attorney, we conclude that there was no "reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 83. To be sure, the district court should have complied with Rule 11 at Mason's plea colloquy and, in a perfect world, the district court also would have responded to Mason's statement that he could not afford a long trial by advising him of his right to court-appointed counsel. Nonetheless, Mason understood his right to have a lawyer appointed and repeatedly asserted that he wanted to plead guilty and that he was satisfied with Williams's representation. The district court's Rule 11 error did not, therefore, affect Mason's substantial rights. Mason's conviction must stand.

## B. Mason's Right to Choice of Counsel at Sentencing

Mason next argues that the district court violated his Sixth Amendment right to choice of counsel by denying his request to have counsel appointed to represent him at sentencing. Mason made his request in the form of a letter filed on August 20, 2010, five weeks before the original date of his sentencing hearing, and almost three full months before his actual sentencing hearing. In his letter Mason requested that the district court "appoint an attorney who can help me," in part because he was "not working well with [his retained attorney] Williams on [his] sentencing hearing" and because he was confident that "Williams [did] not want to spend too much time with [him] because of [his] inability to pay promptly." The district court denied Mason's request without reasons almost a month later.

We review *de novo* the district court's denial of Mason's request for appointed counsel. Mason's argument turns on the proper interpretation of his Sixth Amendment rights. That is a question of law, which we review *de novo*. *See, e.g., United States v. White*, 465 F.3d 250, 254 (5th Cir. 2006) ("The

application of the Sixth Amendment . . . is a question of law that we review *de novo*.").

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  The Supreme Court has interpreted this provision as affording indigent defendants the right to court-appointed counsel. *Johnson v. Zerbst*, 304 U.S. 458, 462–63 (1938); *see also Gideon v. Wainwright*, 372 U.S. 335, 342–45 (1963) (holding that the right of indigent defendants to appointed counsel is made obligatory on the States by the Fourteenth Amendment).  The Supreme Court has also held that the Sixth Amendment generally guarantees criminal defendants the distinct right to representation by the counsel of their choice.  *See Powell v. Alabama*, 287 U.S. 45, 53 (1932). However, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).  This is because the right to court-appointed counsel guarantees the right to adequate representation, not representation by a particular attorney.  *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989).

Before considering whether these Sixth Amendment rights entitled Mason to substitute appointed for retained counsel, we must determine whether Mason effectively asserted his Sixth Amendment rights.  The parties have not cited to any case that discusses what a defendant who is represented by retained counsel must do to invoke his right to appointed counsel, and we are unaware of any binding precedent on this issue.[3]  We are cognizant that too lax of a standard

---

[3] The government argues that Mason's request failed to comply with *United States v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008), which states the rule that a defendant's request to represent himself must be "clear and unequivocal."  *Cano* is inapposite here because the defendant is not *waiving* his constitutional right to counsel, but *asserting* his Sixth Amendment rights to choice of counsel and court-appointed counsel.  *See Brown v.*

might encourage gamesmanship because a defendant could make a vague request for appointment of new counsel, and if that request is ignored or denied, wait and see if subsequent proceedings conclude favorably for him before deciding whether or not to challenge the denial of his request. Nevertheless, it is unnecessary to define the parameters of the standard in this case. On these facts, we conclude that Mason effectively invoked his Sixth Amendment rights. He unambiguously, and in writing, requested appointed counsel. In his letter to the district court, Mason asked "the court to appoint an attorney who can help me." The district court interpreted Mason's letter as a request for a court-appointed lawyer, describing the letter in its order as "defendant's motion to appoint counsel." Nor could the district court have reasonably construed Mason's request as a request for hybrid representation because Mason cited several reasons that, he asserted in his letter, made "it necessary to request a *change*" (emphasis added). Because Mason asserted his Sixth Amendment rights, we must decide whether the Sixth Amendment entitled him to substitute appointed counsel.

We have not previously addressed whether a financially eligible defendant has a Sixth Amendment right to replace his retained counsel with court-appointed counsel. We therefore must turn for guidance to our precedents governing analogous situations. Under our precedents, a defendant who is already represented by appointed counsel is not entitled to have the court appoint substitute counsel unless he can demonstrate "good cause, such as a conflict of interest, [or] a complete breakdown in communication." *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973). We apply this good cause

*Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982) (en banc) (observing that the reason for requiring an unequivocal request to proceed *pro se* is that the defendant is waiving his constitutional right to assistance of counsel). Moreover, even assuming *arguendo* that this rule applies, Mason satisfied it because his request was clear and unequivocal.

requirement because the only Sixth Amendment right that could entitle an indigent defendant to a new attorney is the right to effective assistance of counsel. *See id.* If an indigent's current appointed counsel is constitutionally adequate, he has "no cognizable complaint." *Caplin & Drysdale*, 491 U.S. at 624. By contrast, a defendant need not show good cause to replace existing counsel with new retained counsel. The Sixth Amendment guarantees such a defendant the freedom to secure representation by any lawyer he should choose, provided that none of the recognized exceptions to the right to choice of counsel applies. *See Wheat v. United States*, 486 U.S. 153, 159 (1988) (listing exceptions to the right); *Gonzalez-Lopez*, 548 U.S. at 151–52 (same).

In our view, Mason's situation is more akin to that of a defendant requesting permission to substitute new retained counsel than that of a defendant asking for a different court-appointed lawyer. When Mason asked the district court to appoint an attorney to assist him he had not yet exercised his right to appointed counsel. Therefore, Mason still retained his Sixth Amendment right to choice of counsel. *See id.* at 151 ("[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them."). Consistent with that right, Mason could have substituted any new retained counsel he wished. It follows that one of the constitutionally protected choices Mason could have made was to invoke his right as an indigent to court-appointed counsel.[4] Because Mason retained the right to choice of counsel, he was not required to show good cause to substitute appointed counsel. As we

---

[4] In the usual case, remand would be required for the district court to inquire into the defendant's financial eligibility for appointed counsel. That inquiry is unnecessary here, however, because according to the PSR, "[Mason] and his wife have zero assets, unsecured debt exceeding $300,000, and a *negative* net monthly cash flow of $8,000," and there is nothing in the record to refute these amounts. Unsurprisingly, when the district court considered Mason's financial eligibility for appointed appellate counsel, it found him eligible, and appointed Mason's present counsel. On these facts, there can be no doubt that Mason was financially eligible for court-appointed counsel.

have explained, the good cause standard applies when a defendant seeks *new* appointed counsel because a defendant is entitled to a new appointed lawyer only if he can show constitutionally inadequate representation. *See Young*, 482 F.2d at 995. Here, however, Mason was not already represented by appointed counsel when he requested appointed counsel.

The dissent finds "baffling" our conclusion that Mason's request for appointed counsel implicated his constitutional right to choice of counsel. In the dissent's view, that right extends only to defendants who desire to *retain* new counsel. To support this narrow articulation of the right, the dissent selectively quotes from the Supreme Court's opinions in *Gonzalez-Lopez* and *Caplin & Drysdale*. In *Gonzalez-Lopez*, the Court explained that the Sixth Amendment entitles "a defendant who does not require appointed counsel to choose who will represent him." 548 U.S. at 144. In *Caplin & Drysdale*, the Court wrote that the right to choice of counsel "does not go beyond 'the individual's right to spend his own money to obtain the advice and assistance of . . . counsel.'" 491 U.S. at 626 (quoting *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 370 (1985) (Stevens, J., dissenting)). Read in context, however, these statements say nothing about whether the right to choice of counsel extends to a defendant in Mason's situation. When *Gonzalez-Lopez* limited the right to "a defendant who does not require appointed counsel," it was merely reiterating the established rule that defendants who require appointed counsel have no right to choose which lawyer the state appoints. *See Caplin & Drysdale*, 491 U.S. at 624 ("The [Sixth] Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint" under the distinct Sixth Amendment right to choice of counsel). The dissent's quotation from *Caplin & Drysdale* is likewise irrelevant to this case. There, the Court wrote that the choice of counsel right "does not go beyond 'the individual's right to spend his own money'" as

support for its holding that the Sixth Amendment does not create a right for criminal defendants to expend forfeitable assets to retain their preferred counsel. *Id.* at 626–28. The Court was simply enunciating the principle, stated explicitly in its next sentence, that "[a] defendant has no Sixth Amendment right to spend *another person's money* for services rendered by an attorney." *Id.* at 626 (emphasis added). Thus, neither *Gonzalez-Lopez* nor *Caplin & Drysdale* affects our conclusion that Mason retained his Sixth Amendment right to choice of counsel because he was initially represented by private counsel. Most of the remainder of the dissent's critique is inapplicable to our reasoning because it follows from the false premise that Mason had no right to choice of counsel.

Accordingly, we hold that, pursuant to the Sixth Amendment right to choice of counsel, a criminal defendant is not required to show good cause to substitute appointed for retained counsel, provided of course that he can establish financial eligibility.[5] Our holding accords with a recent Ninth Circuit decision. *See United States v. Rivera-Corona*, 618 F.3d 976, 979–81 (9th Cir. 2010) (holding that a defendant need not show good cause to replace retained with appointed counsel because of the defendant's "qualified right to choice of counsel"). The First Circuit has reached the opposite conclusion, but in a case in which it devoted scant attention to the issue presented here—probably because the defendant did not argue that he had a *per se* right to substitute appointed counsel, but that the district court erred by failing to inquire into an

---

[5] We recognize that the Sixth Amendment right to choice of counsel is qualified, not absolute. The Supreme Court has held that a defendant may not insist on representation by a non-attorney or an attorney disqualified by a conflict of interest, and that a trial court may balance the right to choice of counsel against the needs of fairness and the demands of its calendar. *See Gonzalez-Lopez*, 548 U.S. at 151–52. These exceptions, however, are not applicable here. The district court did not mention the demands of its calendar in denying Mason's request, and that concern would not seem to be implicated in this case because Mason moved for substitution of counsel five weeks before his scheduled sentencing hearing. None of the other exceptions are present because Mason has asked the court to appoint counsel, not for permission to substitute a particular attorney.

No. 10-31240

alleged conflict of interest between the defendant and his attorney. *See United States v. Mota-Santana*, 391 F.3d 42, 45–47 (1st Cir. 2004).

We conclude that the district court violated Mason's Sixth Amendment right to choice of counsel by denying his motion to replace Williams with new counsel for sentencing.[6] Moreover, because Mason was financially eligible, he was entitled to court-appointed counsel.[7] Re-sentencing is required here because the Supreme Court has squarely held that deprivation of the right to choice of counsel is not subject to harmless error review. *See Gonzalez-Lopez*, 548 U.S. at 148–50 (holding that "erroneous deprivation of the right to counsel of choice

---

[6] The dissent misconstrues the right to counsel of choice in accusing us of "tak[ing] *Gonzalez-Lopez* much too far." The dissent treats *Gonzalez-Lopez* as if its facts establish the constitutional floor for demonstrating a violation of the right. But *Gonzalez-Lopez* is just one example of a violation of a defendant's right to choice of counsel. What matters is that Mason has shown that he possessed the right and that none of the recognized exceptions apply to him.

[7] The dissent attacks a strawman when he criticizes our opinion for "skip[ping] the role of the [trial] judge" and giving defendants the green light to "at will change lawyers midway in the proceeding." Our ruling does no such thing. While it is true that the Sixth Amendment right to choice of counsel precludes imposition of a good cause standard on defendants, trial courts retain "wide latitude" to balance "the right to counsel of choice against . . . the demands of [their] calendar[s]." *Gonzalez-Lopez*, 548 U.S. at 152. Thus, when a defendant asserts the right "midway in the proceeding," a trial court may deny the request if a continuance for new counsel would disrupt the court's schedule. *See, e.g., United States v. Jones*, 662 F.3d 1018, 1024–25 (8th Cir. 2011) (finding no abuse of discretion in the district court's denial of defendant's request for a continuance to retain new counsel the week before trial). In this case, the district court gave no indication that it was denying Mason's motion due to scheduling problems. Indeed, that reason would not seem to apply here because Mason requested the change five weeks before his sentencing was scheduled to occur and three months before Mason's actual sentencing hearing.

The dissent's reliance on *United States v. Dilworth* is therefore misplaced. 524 F.2d 470 (5th Cir. 1975). The dissent cites *Dilworth* to support the criticism that we are giving "[m]ore effect . . . to Mason's expression of dissatisfaction than the court has given [to similar expressions] in the past." But *Dilworth* is inapposite because it merely illustrates the unremarkable proposition that a court may balance the qualified right to choice of counsel against scheduling demands.

Our holding is also fully consistent with our prior decision in *United States v. Dinitz*, 538 F.2d 1214 (5th Cir. 1976), which the dissent also cites. In *Dinitz*, we explained that "we must place th[e] qualified right to choose one's own counsel against the backdrop of judicial discretion." *Id.* at 1219. We do not quarrel with this principle, which is given effect through the established exceptions to the Sixth Amendment right to choice of counsel.

No. 10-31240

. . . qualifies as [a] structural error," which is not subject to review for harmlessness (internal quotation marks omitted)).[8]

The dissent's oft-repeated theme is that it is unjustifiable to remand for re-sentencing where, as here, the record is bereft of evidence of any deficiencies in Mason's representation by his retained counsel. Eminent jurists agree. *See id.* at 152–62 (Alito, J., dissenting) (joined by Roberts, C.J., and Kennedy and Thomas, JJ.) (arguing that some showing of prejudice is required to establish a Sixth Amendment choice of counsel violation and that such violations should be subject to harmless error review). Yet for better or worse, this position only commanded a minority of Justices in *Gonzalez-Lopez*, and is not currently the law.[9]

---

[8] We make clear that while *Gonzalez-Lopez* requires re-sentencing given the violation of Mason's right to choice of counsel, it does not, by itself, compel our antecedent conclusion that Mason was deprived of that Sixth Amendment right. We reach that conclusion because there is no basis in precedent or principle for extending the right to defendants who seek to replace retained counsel with new retained counsel but not to financially eligible defendants who seek to replace retained counsel with court-appointed counsel.

[9] The dissent indulges in policy argument, criticizing our decision for "mak[ing] trouble for [trial] judges." That line of critique confuses our role as judges. Our sole task in this case is to answer the legal questions presented. If our interpretation of the Constitution and binding precedent requires us to enunciate a constitutional right that may impose some additional burdens on trial courts, then so be it. Rights, by their nature, have costs.

Nevertheless, it is worth observing that the dissent both misstates and overstates the practical consequences of this decision. First, the dissent asserts that defendants "may now *unilaterally* force substitution of court-appointed counsel at any time without any demonstration that their present counsel is unable or unwilling to continue representing them" (emphasis added). Not true. Only defendants who can demonstrate financial eligibility to the district court are entitled to substitute court-appointed counsel, and the district court retains the discretion to deny a request for substitution where one of the exceptions to the choice of counsel right applies.

Second, the dissent warns that our decision "supplies defendants with a reliable delaying tactic, because new counsel will nearly always require a continuance to get up to speed." In fact, as a delaying tactic, our decision will be useless, or at the very most *un*reliable to defendants, because under established Sixth Amendment principles, a district court may deny a motion to substitute counsel if a continuance is necessary as an exercise of its "wide latitude" to balance "the right to counsel of choice against . . . the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (citing *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983)).

Finally, the dissent contends that the "fact-bound character" of our holding that Mason

18

No. 10-31240

We are sympathetic to the dissent's frustration, which was also expressed by the dissenting Justices in *Gonzalez-Lopez*. For Mason, our decision may represent the very definition of a hollow victory. There is nothing to guarantee Mason a lighter sentence the second time around, and it is possible that he even could receive a harsher sentence. Alas, we are duty-bound by higher authority. Because Mason's Sixth Amendment right to choice of counsel has been abridged, remand is obligatory. Mason is entitled to a new sentencing hearing.

## III.

We AFFIRM Mason's conviction, but VACATE his sentence and REMAND for re-sentencing.

---

effectively invoked his Sixth Amendment rights will leave district courts guessing as to whether ambiguous letters are requesting appointed counsel or merely expressing dissatisfaction with the defendant's current representation by retained counsel. This is a valid concern. We agree that district courts would benefit from a clear standard regarding what a defendant like Mason must say to invoke his Sixth Amendment rights. This question was not well-briefed, however, and we are therefore loath to decide it in this case. Moreover, the present lack of clarity is not a dire problem. Most communications, as the communication in this case, will either unambiguously request or unambiguously fail to request court-appointed counsel, and courts can err on the side of caution with respect to truly ambiguous communications by requesting clarification. We must also emphasize that this decision applies only to the narrow class of cases in which a defendant who is financially eligible for appointed counsel is nevertheless represented by retained counsel, and then becomes unhappy with his retained counsel and requests a court-appointed lawyer. Presumably because it is rare for an indigent defendant to be able to retain counsel and because many defendants (rightly or wrongly) are convinced that they will receive better representation from private rather than appointed counsel, the situation governed by this case has, apparently, rarely arisen, as reflected by the dearth of controlling or even persuasive authority on point.

No. 10-31240

REAVLEY, J., Dissenting:

I would affirm because the patient district judge committed no error. Mason had the assistance of his retained counsel from his initial appearance in court   through his sentencing, and he makes no contention that this representation was ineffective.  Yet the panel majority finds that Mason was denied the right to replace his counsel, and orders a re-sentencing.

## I.

The panel first faults the judge for failing to inform Mason of his right to court-appointed counsel at the June 23 hearing.  With retained counsel present and after all that had been said by defendant about his counsel, it was not necessary for the court to raise the right to have appointed counsel.  Rule 11 does require the information to be given "if necessary."   However the rule be construed, I could find no error for a judge not stating the right to  appointed counsel under those circumstances, when it could imply to defendant the court's lack of confidence in present counsel.

In *United States v. Sanchez*, we held that Rule 11 did not inflexibly require a district court "to personally inform [the defendant] that he was entitled to appointed counsel at all stages of the proceedings."[1] Rule 11's current paragraph (b)(1)(D) was at that time numbered (c)(2), and it began with the qualifying phrase "if the defendant is not represented by an attorney . . . ."[2]  That phrase was removed in the general restyling and restructuring of the Rules of Criminal

---

[1]  650 F.2d 745, 748 (5th Cir. 1981).

[2] *Compare* Fed. R. Crim. P. 11(b)(1)(D); *with* Fed. R. Crim. P. 11(c)(2),  U.S.C.A. (West, 2001).

No. 10-31240

Procedure undertaken in 2002.[3] The change was not intended to alter paragraph (c)(2)'s substance.[4]

We recently relied on *Sanchez* in our unpublished opinion in *United States v. Saucedo-Rios*.[5] The district court in that case had "failed to inform [the defendant] that he had the right to court-appointed counsel."[6] We found no violation of Rule 11. The omitted advice would not have been helpful, we explained, because the defendant "was, in fact, represented by court-appointed counsel throughout the proceedings in the district court."[7] We cited *Sanchez* for the proposition that "Rule 11 limits the necessity for such a charge to situations where the defendant is not represented by an attorney at the plea proceeding."[8] I agree with *Saucedo-Rios*'s interpretation of paragraph (b)(1)(D) to allow some discretion to forgo advice regarding appointed counsel, and the omission here was certainly harmless.

## II.

Mason's complaint is that he was not given an appointed lawyer in response to his letter to the court on August 20. More effect is given by this panel to Mason's expression of dissatisfaction than the court has given in the past. *See United States v. Dilworth*, 524 F.2d 470 (5th Cir 1976). Mason's request was denied by the court, understandably after what had been said at the June 23 hearing and having no reason to think Mason would not receive

---

[3] Fed. R. Crim. P. 11, Advisory Committee Notes, 2002 Amendments.

[4] The Advisory Committee's notes for the 2002 amendments explain that the changes made to Rule 11 were "intended to be stylistic only, except as noted below." The discussion following that statement makes no mention of substantive changes to paragraph (c)(2).

[5] No. 09-50987, 2011 WL 3684500, *1 (5th Cir., Aug. 22, 2011) (unpublished).

[6] *Id.*

[7] *Id.*

[8] *Id. (*citing *Sanchez*, 650 F.2d at 748 (internal quotation marks omitted)).

competent representation from his attorney. And that representation did continue without objection. Sentencing was set for September 28 but was continued until November 18 upon motion by the attorney Williams. On that date the defendant appeared with Williams and sentencing was completed without any complaint about or from counsel. I submit that there can be no legitimate objection to this judge's performance.

But the majority holds that by denying Mason's letter requesting appointed counsel, the district court somehow deprived Mason of "[his] Sixth Amendment right to choice of counsel . . . ." I find this conclusion baffling. The panel cites only the Supreme Court decision stating that right to choice of counsel entitles "a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez.*[9] It "does not go beyond the individual's right to spend his own money to obtain the advice and assistance of . . . counsel." *Chaplin & Drysdale, Chartered v. United States.*[10] Mason never sought to replace Williams with a new retained lawyer, and he never asked for time or assistance to find another retained lawyer.

The only right that Mason's letter at mid-case could possibly implicate was his constitutional right to a publicly paid attorney incident to his right to effective assistance of counsel. When a defendant with an appointed attorney wishes to replace the attorney with a different appointed attorney, we require the defendant to show good cause. *United States v. Young.*[11] We require that showing because "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented . . . ."[12]

---

[9]  548 U.S. 140, 144, 126 S. Ct. 2557, 2561 (2006).

[10]  491 U.S. 617, 626, 109 S. Ct. 2646, 2652 (1989) (internal quotation marks omitted).

[11]  482 F.2d. 993, 995 (5th Cir. 1973).

[12]  *Chaplin & Drysdale*, 91 U.S. at 624, 109 S. Ct. at 2652.

No. 10-31240

Mason's position is equivalent.  The only cognizable ground on which he can be constitutionally entitled to representation at public expense is that he cannot otherwise secure constitutionally effective representation.  Surely establishing that requires some showing that his retained counsel's assistance would likely fall short of the constitutional minimum.  The panel majority does not think so. It takes the view that "Because Mason retained the right to choice of counsel, he was not required to show good cause to substitute appointed counsel."  Mason did not "retain" the right to choice of counsel in any way that sets him apart from a defendant who has accepted appointed counsel.  Mason did not assert the right to choice of counsel, and the fact that he *could have* bears not at all on whether the district court should have appointed a lawyer to replace Williams.

Parties to judicial trials may not at will change lawyers midway in the proceeding.  This court considered the right to choose counsel in *United States v Dimitz*, 538 F.2nd 1214 (1976), beginning with the Supreme Court opinion in *Powell v Alabama*, 53 S.Ct. 55 (1932).  We explained that the qualified right to choose one's own counsel must be placed against the backdrop of judicial discretion.  The judge has discretion in deciding whether to allow changes in counsel considering the defendant's choice and all circumstances.  This panel skips the role of the judge and the need for cause to justify the change, and then sweeps aside my concerns, by declaring its decision to be the command of the Supreme Court in *Gonzalez-Lopez*.  The panel takes *Gonzalez-Lopez* much too far.  There the defendants chosen lawyer was removed unlawfully by the court and, despite repeated requests by the defendant, that chosen lawyer was denied him.  Here, after hearings and accommodations for Mason, he writes a letter to the judge and despite all that went before and the continued representation by the same lawyer, we hold that this indication of Mason's preference was enough to nullify the sentence.  What this panel does is promote the right to choose counsel to give the defendant the decision on whom shall be his counsel at every

23

stage of the case, except for changing appointed counsel.  I find no justification for that exaggeration of *Gonzalez-Lopez*.

This decision makes trouble for judges.  Defendants who have already hired constitutionally adequate counsel may now unilaterally force substitution of court-appointed counsel at any time without any demonstration that their present counsel is unable or unwilling to continue representing them.  This supplies defendants with a reliable delaying tactic, because new counsel will nearly always require a continuance to get up to speed.  The fact-bound character of the majority's holding that Mason's letter effectively asserted his rights adds to the difficulties.  Defendants in criminal cases are understandably anxious about the amount of time and attention their attorneys devote to their cases.  Many express their worries in letters directed to the presiding judge.  Every time a defendant expresses dissatisfaction with retained counsel, the district court will have to wonder whether the defendant's communication is one that requires the court to choose between substituting appointed counsel or risking that every subsequent proceeding in the case will have to be done over again.

Finally, I respectfully suggest to my Fifth Circuit colleagues that we not order resentencing unless the legal rights of a defendant require that.  Resentencing burdens the marshals to transport and attend the defendant and then imposes on a busy district judge to repeat the sentencing.