**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 6, 2012

Lyle W. Cayce
Clerk

No. 10-31240

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RANDEL J. MASON,

Defendant - Appellant.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:09-CR-343-1

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:[*]

We *sua sponte* withdraw our prior opinion, *United States v. Mason*, 668 F.3d 203 (2012), and substitute the following:

Randel Mason appeals his conviction for wire fraud and his sentence of 30 months' imprisonment and $757,792.20 in restitution. He argues that the district court committed plain error by failing to advise him during his guilty plea colloquy of his right to court-appointed counsel if financially eligible, as required by Rule 11 of the Federal Rules of Criminal Procedure. He also argues

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 10-31240

that the district court violated his Sixth Amendment right to choice of counsel by denying his motion to substitute appointed counsel for his retained counsel. We AFFIRM Mason's conviction, but REMAND for the district court to determine, pursuant to 18 U.S.C. § 3006A(c), whether Mason should have been appointed counsel for sentencing, and if so, for re-sentencing.

## I.

Mason is a building contractor and the former owner of Mason Construction Company, Inc., which built residential homes. Mason Construction built homes in five to seven stages. Upon completion of each stage, Mason Construction submitted a draw on its line of credit to its financing company, National City Mortgage (now PNC Mortgage). To receive these draws, Mason Construction submitted a completion certification and an inspection certification signed by an independent inspector.

The conduct relevant to Mason's conviction involved Mason and his long-time office assistant and co-defendant, Tammy Dixon. In August 2005, Mason and Dixon crossed the line, submitting false documentation to National City Mortgage. By this scheme, Mason and Dixon fraudulently obtained $825,943.60. In December 2009, Mason and Dixon were charged with conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 371 and 1343, and twenty-nine counts of wire fraud, in violation of 18 U.S.C. § 1343.

Mason made his initial appearance before the magistrate judge on January 11, 2010, with retained counsel, David Williams. On April 12, 2010, Williams filed a motion to withdraw as counsel, which the magistrate judge denied on April 14. Thereafter, Mason appeared before the district court with Williams on the morning of June 3, 2010, to enter a guilty plea. The district court, however, continued the hearing until that afternoon after Mason said he was confused about the plea. The district court reconvened the hearing that afternoon, but had to reschedule it until June 23, 2010, because after the

No. 10-31240

district court clarified the maximum possible sentence under the plea agreement, Mason indicated that he did not know what to do in light of more fully understanding the consequences of his plea. Before the conclusion of that hearing, Mason indicated that he intended to plead guilty because he did not think he could afford a long trial:

> THE DEFENDANT: I'm sorry, but I — I don't mean to waste the Court's time. I just really don't know what to do.
>
> THE COURT: You're not wasting anybody's time. That's what I'm paid to do. And I don't do piecework, so I want you to be absolutely comfortable and assured of what you're doing. So we'll just put this off to another time.
>
> . . . .
>
> THE DEFENDANT: Your Honor, I don't mean to . . . But no one ever interviewed me, and no one ever heard my side of the story. But yet, you know, I don't want to go to jail or — you know, I mean, I have a serious problem with this because I didn't create this problem.
>
> THE COURT: Well, that's — then do not plead guilty. If you —
>
> THE DEFENDANT: But I can't afford a long trial.
>
> THE COURT: Well, I'm not sure how long the trial will be. Let's tentatively set this for 10:00 on June 23, at which time you can make up your mind what you wish to do. Okay?

Although Mason did not enter a guilty plea on June 3, he did file a document entitled "Understanding of Maximum Penalty and Constitutional Rights" (Understanding of Constitutional Rights), which he had signed on April 30, 2010. In that document, Mason averred that he understood his "right to be represented by counsel (a lawyer) of [his] choice, or if [he could not] afford counsel, [his] right to be represented by court-appointed counsel at no cost to [him]."

On June 17, 2010, Williams filed a second motion to withdraw as Mason's counsel, citing a breakdown in his ability to communicate with Mason that, he

3

No. 10-31240

asserted, rendered effective representation impossible. The district court did not rule on this motion until the hearing on June 23, 2010. At that hearing the district court asked Mason about his relationship with Williams. Mason responded that he was now satisfied with Williams:

> THE COURT: You were originally scheduled for a guilty plea today, but I gather you want to change attorneys?
> THE DEFENDANT: No, sir. Mr. Williams and I have spent quite a long time this week. I think I have a better feel now for what's going on.
> THE COURT: All right. So tell me; are we now agreed that Mr. Williams can represent you?
> THE DEFENDANT: Yes, sir.
> THE COURT: You're sure you're satisfied with that?
> THE DEFENDANT: Yes, sir, I'm satisfied.

Before accepting Mason's guilty plea, the district court again sought and received Mason's assurance that he was satisfied with Williams's representation:

> THE COURT: . . . All right. Mr. Mason, let's talk frankly. This is the point at which I usually ask: Have you had all the time that you need to discuss this with your lawyer?
> THE DEFENDANT: Yes, sir.
> THE COURT: You have? Are you sure you have?
> THE DEFENDANT: Yes, sir.
> THE COURT: And you are satisfied with him as a lawyer?
> THE DEFENDANT: Yes, sir.
> THE COURT: Are you sure, because — tell me about why, how you came back to believing he was a good lawyer for you.
> THE DEFENDANT: I never thought he wasn't a good lawyer. I just was confused. I mean, we came in with one plea agreement and then I guess I got blindsided with another one, and I didn't quite understand the consequences. And we just really weren't communicating very well.
> THE COURT: But you are now?
> THE DEFENDANT: Yes, sir. He sat down and we talked at length, and I think I understand, yes, sir.

No. 10-31240

> THE COURT: Are you sure you understand what's happening?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you are sure that you want to keep Mr. Williams?
>
> THE WITNESS [sic]: Yes, sir.

The district court then proceeded to conduct the plea-taking ceremony required by Rule 11 of the Federal Rules of Criminal Procedure. However, the district court did not orally advise Mason of the right of a financially eligible defendant to have court-appointed counsel represent him at trial and every other stage of the proceedings. Mason pleaded guilty to counts 6 and 27. The district court accepted Mason's plea.

On August 20, 2010, Mason filed a letter requesting "the court to appoint an attorney who can help me." Mason explained that he was "not working well with . . . Williams on [his] sentencing hearing" and that he was confident that "Williams [did] not want to spend too much time with [him] because of [his] inability to pay promptly." Almost a month later, the district court denied Mason's request without reasons.

The district court sentenced Mason on November 18, 2010. According to the calculations in Mason's Presentence Investigation Report (PSR), Mason's guidelines sentencing range was 27 to 33 months. After a lengthy hearing on the amount of loss caused by Mason's fraud, the district court adopted the PSR's calculations, and sentenced Mason to 30 months' imprisonment on each count, to run concurrently. The district court ordered Mason to pay $757,792.20 in restitution to the victim mortgage company. The district court also imposed a three-year term of supervised release for each count, to run concurrently.

After filing a timely notice of appeal, Williams filed a motion to withdraw and to have counsel appointed to represent Mason on appeal. Mason then filed a financial affidavit under seal. The district court determined that Mason was

No. 10-31240

financially unable to retain counsel, granted Williams's motion to withdraw, and ordered that counsel be appointed to represent Mason.

## II.

**A. Mason's Challenge to his Guilty Plea**

Mason first asks us to overturn his guilty plea. He argues that the district court committed reversible error by failing to advise him of his right to court-appointed counsel, if financially eligible, during his guilty plea colloquy, as required by Fed R. Crim. P. 11(b)(1)(D).

Because Mason did not raise this issue in the district court, we review for plain error. Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Vonn*, 535 U.S. 55, 59 (2002). Mason therefore bears the burden of proving (1) error, (2) that is plain, and (3) that affects his substantial rights. *United States v. Olano*, 507 U.S. 725, 733–34 (1993). If Mason satisfies the first three prongs of the plain error analysis, we proceed to the fourth prong, which affords us "the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009) (internal quotation marks omitted).

We need not decide whether the district court erred in not advising Mason of his right to court-appointed counsel because any error did not affect Mason's substantial rights. To show that the omitted advice affected his substantial rights Mason "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Mason's strongest evidence is his exchange with the district court at his June 3, 2010 hearing. After deciding not to plead guilty, Mason lamented to the district court that "no one ever interviewed me, and no one ever heard my

No. 10-31240

side of the story.  But yet, you know, I don't want to go to jail or—you know, I mean, I have a serious problem with this because I didn't create this problem." After the district court responded, "then do not plead guilty," Mason objected, "But I can't afford a long trial."  As Mason would have it, this statement definitively proves that he would have decided to proceed to trial right then and there if only he could have afforded trial counsel.  This interpretation would, indeed, be quite powerful if the only record evidence were the transcript of the June 3 hearing.  But the remainder of the record precludes Mason's interpretation.

Most fatal to Mason's position, the record reveals that Mason was aware of his right to appointed trial counsel notwithstanding the district court's error. More than a month before his first attempt to plead guilty, Mason signed the Understanding of Constitutional Rights document, a simple document, with barely over a page of double-spaced text, that plainly states that he understood his right to a court-appointed attorney if he could not afford his own.  By affixing his signature to that document, Mason "state[d] that I understand . . . [m]y right to be represented by counsel (a lawyer) of my choice, or if I cannot afford counsel, my right to be represented by court-appointed counsel at no cost to me."  Mason's retained attorney also signed the document.  Recognizing the difficulty that this document poses for his position, Mason argues that although the document reflects his understanding of his right to court-appointed counsel for his guilty plea hearing, it does not demonstrate that he was aware of his right to appointed *trial* counsel.  He asserts that this was his understanding given that the document "was prepared in connection with a plea hearing" and nowhere explicitly states that the right to appointed counsel extends to trial. We are unconvinced.  Mason could not have reasonably read the document as referring to his right to appointed counsel only in connection with his guilty

7

plea, and not trial, because the other constitutional rights he acknowledged in that document pertain to trial, not his guilty plea.

Moreover, there are many indications in the record that Mason's guilty plea was voluntary. Before accepting Mason's plea on June 23, 2010, the district court twice requested and obtained his assurance that he wanted to plead guilty. At the hearing, Mason twice indicated that he understood what was occurring. The district court found him competent to enter his plea. And although Mason had previously expressed dissatisfaction with Williams, his attorney, he repeatedly reassured the district court before pleading guilty that he was happy with Williams representing him, and was sure he wanted to keep him as his lawyer. The following conversation is illustrative:

> THE COURT: And you are satisfied with [Williams] as a lawyer?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you sure, because — tell me about why, how you came back to believing he was a good lawyer for you.
>
> THE DEFENDANT: I never thought he wasn't a good lawyer. I just was confused. I mean, we came in with one plea agreement and then I guess I got blindsided with another one, and I didn't quite understand the consequences. And we just really weren't communicating very well.
>
> THE COURT: But you are now?
>
> THE DEFENDANT: Yes, sir. He sat down and we talked at length, and I think I understand, yes, sir.
>
> THE COURT: Are you sure you understand what's happening?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you are sure that you want to keep Mr. Williams?
>
> THE WITNESS [sic]: Yes, sir.

Given that Mason knew about his right to appointed counsel from the Understanding of Constitutional Rights document, and that he unequivocally reiterated that his plea was voluntary and that he was satisfied with his

attorney, we conclude that there was no "reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 83. To be sure, in a perfect world the district court would have responded to Mason's statement that he could not afford a long trial by advising him of his right to court-appointed counsel. Nonetheless, Mason understood his right to have a lawyer appointed and repeatedly asserted that he wanted to plead guilty and that he was satisfied with Williams's representation. The district court's Rule 11 error did not, therefore, affect Mason's substantial rights. Mason's conviction must stand.

## B. Mason's Right to Appointed Counsel at Sentencing

Mason next argues that the district court violated his Sixth Amendment right to choice of counsel by denying his request to have counsel appointed to represent him at sentencing. We need not reach this claim because we conclude that the district court failed, pursuant to the Criminal Justice Act of 1964 (CJA), 18 U.S.C. § 3006A(c), to make an "appropriate inquiry" into Mason's financial eligibility for appointed counsel. On remand, Mason may obtain the relief he seeks under that statute. Although Mason did not specifically request relief under the CJA, it is a familiar and time-honored prudential rule that federal courts "will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring); *accord Ramsay v. Bailey*, 531 F.2d 706, 707 (5th Cir. 1976) ("However novel and interesting may be these constitutional claims, it is our duty to decide this case on other grounds if possible.").

The CJA provides, in relevant part, that "[i]f at any stage of the proceedings . . . the court finds that the [defendant] is financially unable to pay counsel whom he had retained, it may appoint counsel . . . as the interests of

No. 10-31240

justice may dictate." 18 U.S.C. § 3006A(c).  Appellate review of a district court's determination of financial eligibility for mid-case appointment under § 3006A(c) requires a three-part inquiry: (1) Did the district court conduct an "appropriate inquiry" into the defendant's financial eligibility? (2) If so, was the district court's eligibility conclusion correct?  (3) If the inquiry was appropriate and the eligibility determination correct, did the district court err in weighing the "interests of justice"? *United States v. Parker*, 439 F.3d 81, 92–93 (2d Cir. 2006); *see also United States v. Haas*, 623 F.3d 1214, 1221 (8th Cir. 2010); *United States v. Rivera-Corona*, 618 F.3d 976, 981-82 (9th Cir. 2010).

Here, the district court did not make an "appropriate inquiry" into Mason's financial eligibility.  Under our precedent, "it is incumbent upon the defendant to notify the court of his desire to have counsel appointed." *United States v. Foster*, 867 F.2d 838, 841 (5th Cir. 1989).  Mason did just that in his letter of August 20, 2010.  Thereupon, the CJA "require[d] the court to make an appropriate inquiry into the defendant's financial status." *Id.*  The record indicates only that the district court summarily denied Mason's request.  That is not enough to satisfy us that the district court made an appropriate inquiry, especially in light of the fact that Mason, in his letter requesting a court-appointed attorney, expressed concern that his retained attorney, "Williams[, did]  not want to spend too much time with [him] *because of [his] inability to pay promptly*" (emphasis added).  *Cf. United States v. Moore*, 671 F.2d 139, 140–41 (5th Cir. 1982) (holding that the district court abused its discretion in not "pursu[ing] further the matter of financial need for the appointment of counsel" where facts in the record put the district court on notice that the defendant could not afford counsel).

If, on remand, the district court determines that Mason was financially eligible for appointed counsel, it must determine whether the "interests of justice" dictated the appointment of new counsel.  If the district court so

No. 10-31240

determines, it should appoint counsel to represent Mason at a new sentencing hearing.

### III.

We AFFIRM Mason's conviction, but REMAND for the district court to determine, pursuant to 18 U.S.C. § 3006A(c), whether Mason should have been appointed counsel for sentencing, and if so, for re-sentencing.

No. 10-31240

REAVLEY, Circuit Judge, dissenting:

I would affirm. The record of this trial will not justify this worthless and burdensome procedure.

After the prior experience over the defendant's representation, the district judge is faulted for not conducting a hearing when the defendant writes a letter saying he wants more time with a lawyer. Then the court here sends the case back for a hearing about what he could (or should) have done despite now knowing that justice was served by retained counsel continuing to represent the defendant without any question or objection from anyone. That unnecessarily burdens this judge and impairs the work of other trial judges who serve justice but need not respond in full every time a defendant writes a letter.